Law Office Of Erik E. Eklund
333 SW Taylor St., Suite 300
Portland, OR 97204
Phone: (503) 782-4795
erikeklundlaw@gmail.com

Attorney for Plaintiff


IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


**JOHN THOMAS BRISTOL,**                          USDC Case No. _____

            Plaintiff,

      v.

**COLETTE S. PETERS, BRAD CAIN,**                          COMPLAINT
**MELISSA NOFZIGER, DAWN**                          Violation of Civil Rights
**MEYER, SAM M. NAGY,**                          (42 U.S.C. § 1983) - Declaratory,
**JOHN DOE(S), JANE DOE(S);**                          Injunctive, Damages Relief
each sued in their individual and official capacities,                          Jury Trial Demanded

            Defendants.


**INTRODUCTORY STATEMENT**

1.

      This is an action brought by Plaintiff John Thomas Bristol pursuant to 42

U.S.C. § 1983, alleging violations of his right to due process of the law under the

Fourteenth Amendment to the United States Constitution. Plaintiff seeks


Page 1 – COMPLAINT

declaratory and injunctive relief, nominal, compensatory and punitive damages, and reasonable costs and attorney's fees, pursuant to 42 U.S.C. § 1988.

## JURISDICTION AND VENUE

2.

This Court has jurisdiction over Plaintiff's claims of violation of federal constitutional rights under 28 U.S.C. §§ 1331 and 1343.

3.

Venue is proper under 28 U.S.C. § 1391(b), in that one or more of the Defendants reside in the District of Oregon and Plaintiff's claims for relief arose in this district.

## PARTIES

4.

Plaintiff JOHN THOMAS BRISTOL was, during all times relevant, a prisoner of the Oregon Department of Corrections ("ODOC") and under the supervision of Multnomah County Community Corrections ("MCCC"). Plaintiff is not currently incarcerated.

5.

Defendant COLETTE S. PETERS is and was at all times relevant the Director of the ODOC. She is responsible, among other things, for providing programs for the delivery to the public of the services assigned to the department and adopting rules for the government and administration of the ODOC. She has

been personally involved in the violations alleged herein. She is sued in her official and individual capacities.

6.

Defendant BRAD CAIN was at all times relevant the Superintendent of ODOC Powder River Correctional Facility (PRCF). He has been personally involved in the violations alleged herein. He sued in his official and individual capacities.

7.

Defendant MELISSA NOFZIGER is and was at all times relevant an Assistant Inspector General, Hearings Unit, with the ODOC. She has been personally involved in the violations alleged herein. She is sued in her official and individual capacities.

8.

Defendant DAWN MEYER is and was at all times relevant the Education, Training and Treatment Administrator at ODOC. She has been personally involved in the violations alleged herein. She is sued in her official and individual capacities.

9.

Defendant SAM M. NAGY is and was at all times a Hearings Officer with ODOC. He has been personally involved in the violations alleged herein. He is sued in his official and individual capacities.

10.

Defendants have acted under color of state law at all times relevant to this complaint.

**FACTUAL ALLEGATIONS**

<u>SHORT TERM TRANSITIONAL LEAVE PROGRAM</u>

11.

At all times relevant, Or. Rev. Stat. § 421.168 required ODOC to establish a Short-Term Transitional Leave Program (STTL). The program provides inmates with early release from confinement no more than 90 days prior to the inmate's release date. The purpose of STTL is to allow the inmate the opportunity to secure appropriate support when necessary for successful reintegration into the community and reduce the prison population. ODOC is responsible for identifying each inmate eligible for STTL, assisting in preparing a transition plan for employment, education or other opportunity in the community, and granting transitional leave. ODOC is required to adopt rules to carry out its duties under the Or. Rev. Stat. § 421.168 and those rules must include a set of release conditions for inmates on STTL status, which are to replicate post-prison supervision conditions. Violations of the conditions of STTL release subject an inmate to immediate return to prison.

12.

At all times relevant, the process provided by ODOC for violations of STTL was provided in Or. Admin. R. 291-063-0036. Under those rules, the supervising officer may impose sanctions at a local level if he/she determines that the violation can be appropriately addressed and the offender admits the violation and accepts the sanction. The supervising officer must, within 5 working days of the violation,

Page 4 – COMPLAINT

submit a misconduct report to the releasing authority anytime the violation may result in revocation of leave. The releasing authority shall ensure the misconduct report is submitted in accordance with Or. Admin. R. ch. 91, div. 105. When a misconduct report is submitted, a hearing shall be conducted in accordance with Or. Admin. R. ch. 91, div. 105. An offender found in violation of a rule while on transitional leave may be subject to a revocation of the leave and be returned to a ODOC facility pursuant to Or. Admin. R. 291-105-0069(1)(e) and may be subject to other sanctions in accordance with Or. Admin. R. ch. 91, div. 105.

13.

Individuals participating in STTL are expected to be gainfully employed or in school full-time. They enjoy the freedom to be with family and friends and to form other enduring attachments of normal life, and live in conditions very different from that of confinement in prison.

14.

Individuals participating in STTL who abide by the release conditions can reasonably expect not to be returned to prison or have STTL revoked based on the laws governing STTL.

15.

Defendant Collette Peters is responsible, as the Director of the ODOC, to carry out ODOC's duties under Or. Rev. Stat. § 421.168.


///

16.

The ODOC maintains unwritten policies and practices and written rules, enforced by Defendants, that deprive individuals facing STTL revocation of the minimal due process rights set out in *Morrissey v. Brewer*, 408 US 471 (1972) and *Gagnon v. Scarpelli,* 411 US 778 (1973).

## DEFENDANTS' ACTS AND OMISSIONS GIVING RISE TO THIS CIVIL RIGHTS ACTION

17.

On October 6, 2014, Plaintiff was convicted of Unlawful Delivery of Cocaine, Or. Rev. Stat. § 475.880(2), following entry of a guilty plea, and sentenced to a prison term of 35 months with 36 months post-prison supervision. As part of his sentence, Plaintiff was eligible for early release programs, including STTL.

18.

On November 3, 2015, Plaintiff was transferred within ODOC to the Powder River Correctional Facility in Baker City to begin the 180-day drug treatment program. There, he engaged in classes and activities related to the program 7 days a week from 7:00 AM to 9:00 PM. Plaintiff's parents visited him every 2 weeks while he was at PRCF.

19.

On June 29, 2016, Plaintiff was released on STTL from ODOC custody and placed under the supervision of Multnomah County Community Corrections.

20.

Upon his release, Plaintiff resided at Bridges to Change, a privately operated transitional home. He was employed full-time at a Baja Fresh franchise in Sherwood, Oregon that was then and continues to be owned and operated by his aunt and uncle, David and Rebecca Bristol. He was approved to begin a 6-week Baja Fresh management program in Vancouver, Washington, but his probation officer, Paul Adams, denied him permission to travel out of state to participate. Plaintiff offered to pay for GPS monitoring to facilitate the same, but was rebuffed. Plaintiff spent time with his family and friends and formed other enduring attachments to normal life on STTL.

21.

On July 29, 2016, Plaintiff provided Volunteers of America (VOA) treatment services a urine sample for testing, in accordance with the conditions of his transitional leave.

22.

On or about July 30, 2016, Plaintiff's treatment counselor, David Poole, asked Plaintiff why he had failed to provide a urine sample for analysis the day before. Given that Plaintiff had in fact provided such sample, this raised a concern that the sample had been misplaced or destroyed.

23.

On August 2, 2016, Cordant Health Solutions provided correction officials with lab test results of Plaintiff's putative urine sample.  Cordant Health Solutions

concluded that the urine sample tested positive for opiates (i.e., codeine), at 127 ng/ml, using a base cutoff level of 80 ng/ml. The Substance Abuse And Mental Health Services Administration (SAMSHA) sets national standards for cutoff levels used by drug-testing labs; the current standard for opiates is 2,000 ng/ml.

24.

Later on August 2, 2016, David Poole informed Plaintiff that his urine sample had been "found," and informed him that it had tested positive for opiates, opining that there was no way that the result could be ascribed to food ingestion.

25.

On or after August 2, 2016, based on information and belief, Paul Adams, Plaintiff's parole officer, verbally informed Defendant Brad Cain, then Superintendent and release authority at PRCF, that Plaintiff had violated his terms of transitional leave.

26.

On August 11, 2016, Defendant Brad Cain authorized Paul Adams to suspend transitional leave and arrest and detain Plaintiff "[b]ased on verbal information provided by [Adams]" that established Plaintiff was "apparently in violation of his terms of transitional leave."

27.

On August 11, 2016, Plaintiff was arrested and detained in ODOC custody.


///


Page 8 – COMPLAINT

28.

On August 12, 2016, Paul Adams issued a Notice of Violation, citing the aforementioned urine sample as evidence of codeine use. He recommended the termination of transitional housing based on the positive drug test result and Plaintiff's purported statements that he may have eaten bread containing poppy seeds.

29.

On August 15, 2016, Mercy Ballard, an ODOC Counselor, submitted an ODOC Misconduct Report, in which she stated that Plaintiff "**violated transitional leave conditions and appears to be in violation of the following rules**:" Or. Admin. R. 291-105-0015(4)(a) 4.01 (Disobedience of an Order I) and Or. Admin. R. 291-105-0015(4)(d) 4.04 (Transitional Leave Violation). (Emphasis in original).

30.

Plaintiff retained counsel for the purpose of disputing the alleged violations. Specifically, Plaintiff disputed having violated his transitional leave conditions for reasons that would be too complex or otherwise difficult to develop or present without counsel, i.e., unreliable drug testing.

31.

On August 24, 2016, Defendant Dawn Meyer denied Plaintiff's counsel's request to represent Plaintiff at his misconduct hearing based ODOC's "long-standing historical policy and practice, and consistent with applicable United States

Supreme Court and Oregon Appellate court decisions[.]" The court decisions
Defendant Dawn Meyers relied on pertained to prison disciplinary hearings in
which good time was being retracted from incarcerated individuals.

32.

On August 24, 2016, Plaintiff's counsel informed Defendant Dawn Meyer that
the cases she cited to deny his request to represent Plaintiff were inapplicable and
that Plaintiff was entitled to a *Morrissey* hearing, as he had been living in the
community on transitional leave. Plaintiff's counsel requested a *Morrissey* hearing
to be granted to his client.

33.

On August 25, 2016, Defendant Melissa Nofziger emailed Plaintiff's counsel
to inform him that Plaintiff would not receive a *Morrissey* hearing because "he was
not out on parole." She also upheld Defendant Dawn Meyer's "decision to not allow
an attorney to be present[.]"

34.

On August 25, 2016, Plaintiff received a Notice of Hearing/Inmate Rights
from the ODOC.

35.

On August 26, 2016, Plaintiff's counsel requested a brief continuance of
Plaintiff's disciplinary hearing to present exculpatory evidence, i.e., a hair sample to
conduct a drug screen, as well as evidence that the test results relied upon by
ODOC were flawed.

36.

On August 26, 2016, Defendant Melissa Nofziger informed Plaintiff's counsel that ODOC "will not accept [hair follicle test results] as evidence" at Plaintiff's disciplinary hearing.

37.

On August 29, 2016, at Coffee Creek Correctional Facility, Sam M. Nagy, ODOC Hearings Officer, conducted a disciplinary hearing and denied Plaintiff's request for a continuation of the hearing to present additional evidence (hair follicle evidence) that would establish he had not used opiates. Sam M. Nagy advised Plaintiff that "if such evidence became available, a hearing could be ordered reopened to consider that new evidence at some future date." Nagy found Plaintiff guilty of violating Rule 4.04 (Transitional Leave Violation) and Rule 4.03 (Disobedience of an Order III, a lesser included minor rule violation) and revoked Plaintiff's transitional leave.

38.

Sometime after his August 29, 2016 hearing, Plaintiff was transferred to the Oregon State Penitentiary. While incarcerated there, he was informed by corrections staff that he had been designated a "dangerous inmate," meaning that he required an escort to go anywhere within the facility, because of the disciplinary findings.

///

39.

On September 29, 2016, Plaintiff's counsel contacted ODOC general counsel, Jefferey Vanvalkenburg, informing him that ODOC's actions violated Plaintiff's due process rights in revoking his transitional leave.

40.

On September 9, 2016, ODOC issued the final order from Plaintiff's disciplinary hearing.

41.

On October 13, 2016, a drug testing agency retained by Plaintiff's counsel, Bio-Med Testing Services of Salem, collected a sample of Plaintiff's hair. On October 17, 2016, that sample was tested and determined to be negative for the five most commonly abused street drugs, including opiates. The sample provided was enough to reveal a 90-day window of drug use prior to collection. In other words, it showed that Defendant had not used illicit substances since at least July 15, 2016.

42.

Plaintiff timely filed a Petition For Administrative Review of the Order revoking STTL, pursuant to Or. Admin. R. 291-105-0085. In addition to other arguments, Plaintiff provided hair follicle testing results which came up negative for the five-panel drug screen, which was more reliable than the flawed urine testing done by Cordant Health Solutions.

///

Page 12 – COMPLAINT

43.

On or about January 3, 2017, Defendant Melissa Nofziger denied

consideration of Plaintiff's administrative review request based on Or. Admin. R.

291-105-0085(1), which required the order to have retracted earned time credits,

good time, or recommended an extension of an inmate's post prison supervision

release date to be reviewable.

44.

A judgment in Plaintiff's favor would not necessarily imply the invalidity of

his conviction or sentence or otherwise affect his term of incarceration.

45.

As a result of Plaintiff's termination from transitional leave, he served 172

additional days in prison. He has incurred legal costs and lost financial

opportunities. He had to start his job over as a new hire at minimum wage upon his

release. Baja Fresh managers make considerably more in salary. Plaintiff could be a

shift manager were it not for Defendants' actions; the management training

program referred to in paragraph 19 is not a prerequisite for a shift manager.


**CLAIM FOR RELIEF**

**(14th Amend. U.S. Const.—Procedural Due Process – *Morrissey Hearing*)**

46.

Plaintiff re-alleges each and every allegation of paragraphs 1 through 45, and

incorporates those allegations herein by this reference.

47.

Plaintiff had a protected liberty interest in his release from confinement on STTL.

48.

Defendants Peters, Nofziger, Cain, Meyer, and Nagy deprived Plaintiff of his liberty interest in release from confinement by denying him the minimal due process requirements set forth in *Morrissey v. Brewer,* 408 U.S. 471, 480 (1972), *Gagnon v. Scarpelli,* 411 U.S. 778 (1973), including:

a. Failing to provide a preliminary hearing promptly after Plaintiff's arrest and detention to determine whether there was probable cause or reasonable ground to believe that he had committed acts that would constitute a violation of transitional leave conditions;

b. Failing to provide at a preliminary hearing: notice of the alleged transitional leave violations; an opportunity to appear and to present evidence; a conditional right to confront the government's witnesses; an independent decision-maker; and a written report of the hearing.

c. Failing to provide a revocation hearing at which a final evaluation of any contested relevant facts and consideration of the facts as determined at the preliminary hearing warrant revocation;

d. Failing to provide at a revocation hearing: written notice of the claimed violations of transitional leave; disclosure of evidence against the inmate; opportunity to be heard in person and to present witnesses and documentary evidence; the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); a neutral and detached hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and a written statement by the factfinders as to the evidence relied on and reasons for revoking transitional leave.

e. Failing to make an individualized decision at the preliminary and revocation hearing as to the need for counsel at the hearing.

Page 14 – COMPLAINT

f.      Failing to provide Plaintiff a meaningful opportunity to be heard and to show exculpatory evidence;

g.      Maintaining a policy and practice categorically prohibiting offenders from being represented by counsel;

h.      Failing to promulgate rules and policies providing a constitutionally adequate process for the revocation of transitional leave; and

i.      Summarily suspending and/or terminating Plaintiff's transitional leave without providing a preliminary hearing and revocation hearing.

49.

Had Defendants not deprived Plaintiff of these rights, he would not have lost his liberty.

50.

The acts and omissions of Defendants caused Plaintiff irreparable harm by depriving Plaintiff of his liberty in release from confinement and other financial harms.

51.

The acts and omissions of Defendants deprived Plaintiff of procedural due process in violation of the Fourteenth Amendment to the United States Constitution.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays that this Court will enter a Judgment in his favor, and against Defendants, as follows:

A.      Grant a declaratory judgment, declaring that:

1.      Defendants violated Plaintiff's right to due process under the
Fourteenth Amendment by failing to provide the process required in *Morrissey v.
Brewer,* 408 U.S. 471 (1972), *Gagnon v. Scarpelli,* 411 U.S. 778 (1973) before
depriving him of his liberty interest in release from confinement on STTL;

2.      Defendants violated Plaintiff's right to due process under the
Fourteenth Amendment by refusing to consider his request to be represented by
counsel in his disciplinary hearing;

3.      Defendants violated Plaintiff's right to due process under the
Fourteenth Amendment by denying him the opportunity to present evidence in his
defense at his disciplinary hearing;

B.      Grant injunctive relief, ordering Defendants and their agents and
employees, to immediately:

1.      Vacate Plaintiff's September 9, 2016, disciplinary order;

2.      Order Defendants to promulgate rules and procedures in
accordance with and cease acting contrary to *Morrissey v. Brewer,* 408 U.S. 471, 480
(1972) and *Gagnon v. Scarpelli,* 411 U.S. 778 (1973) in response to alleged violations
of STTL;

C.      Grant Plaintiff nominal damages against each Defendant, jointly and
separately, in their individual capacities, for their violation of Plaintiff's
constitutional rights, as alleged herein;

D.      Grant Plaintiff compensatory damages in an amount to be determined
at trial against each Defendant, jointly and separately, in their individual

capacities, for their violation of Plaintiff's constitutional rights, as alleged herein; and

     E.    Grant Plaintiff punitive damages in an amount to be determined at trial, against each Defendant, jointly and separately, in their individual capacities for their willful, deliberate and intentional violation of Plaintiff's constitutional rights by:

     1.    Knowingly and willfully depriving Plaintiff of the ability to present evidence in his defense at his misconduct hearing;

     2.    Knowingly and willfully depriving Plaintiff of his due process protections in depriving him of his liberty interest in release from confinement;

     F.    Award Plaintiff reasonable costs, expenses and attorney fees, pursuant to 42 U.S.C. § 1988; and

     G.    Grant Plaintiff such further relief as this Court deems just and equitable under the circumstances.

**Plaintiff demands trial by jury.**

DATED this ___ day of May 2017.

Respectfully submitted,
*s/ Erik Eklund*
Erik Eklund