IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| JOHN THOMAS BRISTOL, | Case No. 3:17-cv-00788-SB |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| COLETTE S. PETERS, BRAD CAIN, MELISSA NOFZIGER, DAWN MEYER, SAM M. HAGY, JOHN DOE(S), each sued in their individual and official capacities, | |
| Defendants. | |

**BECKERMAN, U.S. Magistrate Judge.**

John Thomas Bristol ("Bristol") filed a complaint against five Oregon Department of Corrections ("ODOC") employees pursuant to 42 U.S.C. § 1983, alleging violations of his Fourteenth Amendment due process rights arising from their revocation of Bristol's transitional leave status without first providing the protections set forth in *Morrissey v. Brewer*, 408 U.S. 471 (1972).[1] (ECF No. 1.) Bristol voluntarily dismissed defendant Colette S. Peters from this case,

---

[1] Bristol also named John and Jane Doe(s), but has not served any Doe defendants. Rule 4(m) of the Federal Rules of Civil Procedure requires a plaintiff to serve a defendant within 90 days after he files the complaint. The 90-day service deadline runs from the date of the original complaint for any Doe defendant named therein. *See Third World Media, LLC v. Does 1-1568*,

PAGE 1 – OPINION AND ORDER

and the Court refers to the four remaining defendants as the "State Defendants." Bristol seeks declaratory relief, injunctive relief, and damages. (Compl. at 15-16.)

The parties filed cross motions for summary judgment.[2] (ECF Nos. 19, 22.) The Court heard oral argument on both motions. For the reasons stated below, the Court grants in part Bristol's motion for summary judgment, and grants in part the State Defendants' motion for summary judgment.[3]

## BACKGROUND

Bristol was sentenced to serve a 35-month prison term in ODOC custody and a 36-month term of post-prison supervision following his September 23, 2014 conviction for Delivery of Cocaine. (Erik E. Eklund Am. Decl. Ex. 2 at 6-7, Ex. 5 at 17-19, Mar. 12, 2018.) On May 12, 2015, while still in custody, Bristol applied to participate in an alternative incarceration program ("AIP").[4] (Michael R. Washington Decl. ¶ 4; Ex. 3, Mar. 12, 2018.) On October 28, 2015, ODOC moved Bristol from Santiam Correctional Institution to Powder River Correctional

---

No. C. 10-04470 LB, 2011 WL 4344160, at *2 (N.D. Cal. Sept. 15, 2011) (finding that, absent a showing of good cause, a court may dismiss a complaint for failure to serve Doe defendants within the time allowed by Rule 4(m)). Accordingly, the Court dismisses the Doe defendants.

[2] In a supplemental filing, Bristol argues that he will be prejudiced if the Court considers the State Defendants' reply brief filed in support of their motion for summary judgment as a response to Bristol's motion for summary judgment. (Pl.'s Mot. Additional Authorities at 3.) In light of the Court's analysis herein and the absence of any disputed material facts, the Court finds that Bristol is not prejudiced by the sequence of the State Defendants' briefing and therefore denies Bristol's motion to submit additional authorities on the issue.

[3] The parties have consented to the jurisdiction of a U.S. Magistrate Judge pursuant to 28 U.S.C. § 636(c).

[4] An AIP is defined as a "highly structured corrections program that includes intensive interventions, rigorous personal responsibility and accountability, physical labor, and service to the community." Or. Admin. R. ("OAR") § 291-062-0110(1). Bristol submitted copies of the Oregon Administrative Rules in effect at the time of his revocation as an appendix to his motion, and the Court cites to those versions of the regulations herein. (*See* Eklund Am. Decl. App.)

Facility ("PRCF") to participate in the AIP Substance Abuse Treatment Program. (Washington Decl. Ex. 4.)

After completing the first component of the AIP, ODOC approved Bristol for its Short Term Transitional Leave ("STTL") program, to begin on June 29, 2016 and continue until September 27, 2016 when "post-prison supervision begins." (Washington Decl. Ex. 6; Eklund Am. Decl. Ex. 5 at 50.) Subsection (4) of OAR § 291-062-0110 defines "Short-Term Transition Leave/Non-Prison Leave" as a "period of leave not to exceed 90 days preceding an established release date that allows an inmate opportunity to secure appropriate transitional support when necessary for successful reintegration into the community . . . . For purposes of these rules, short-term transitional leave is non-prison leave." However, subsection (5) of that provision defines "Term of Incarceration" to include "any time an inmate spends on short-term transitional/non-prison leave . . . ."

In accordance with the STTL authorization, ODOC released Bristol into the community under the supervision of Multnomah County Community Corrections. Bristol resided at Bridges to Change, a privately-owned transitional home in Multnomah County. In addition to the "General Conditions" for STTL, Bristol was also subject to "Special Conditions" on release. (Eklund Am. Decl. Ex. 5 at 51-53.) Bristol's "Special Conditions" included:

1. I agree to submit to Department of Corrections structured sanctioning process as describe[d] in DOC rule 58.[5]

. . . .

---

[5] "DOC rule 58" is Division 58 of Chapter 291 of the Oregon Administrative Rules. *See* OAR §§ 291-058-0010 *et seq*. ("Structured, Intermediate Sanctions"). Relevant here, if a participant violates any of his STTL conditions, he "may be subject to a revocation of the leave and be returned to a Department of Corrections facility . . . and may be subject to other sanctions . . . ." OAR § 291-063-0036(3); *see also* OAR § 291-058-0046(3) (incorporating by reference the provisions of OAR § 291-063-0036(2) and (3) to the STTL program regulations).

3. Abide curfew imposed by PO.

4. Abide by any geographical restrictions imposed by the supervising officer.

5. Maintain daily treatment log. Daily [tracking of] activities while on transitional leave shall total no less than 14 hours per day. Offender shall log daily activities in detail . . . .

. . . .

7. Shall abide by and successfully complete/discharge from aftercare as developed by PRCF/New Directions Residential Alcohol/Drug Treatment Program . . . .

. . . .

9. Do not own/operate a motor vehicle without prior written permission of supervising officer.

. . . .

13. Shall submit to assessment and evaluation to develop a case plan for supervision and/or treatment.

. . . .

☒ Attend alcohol and drug support group meetings/treatment approved by parole officer.

☒ Attend community meetings on a schedule to be determined by the parole officer.

. . . .

☒ Consent to search computer or other electronic equipment upon request of PO.

☒ Attend cognitive programming as directed by PO.

☒ Submit to polygraph testing at parole officer's discretion and inmate's expense.

. . . .

(*Id.*) Oregon regulations allow ODOC to remove or suspend Bristol from the STTL program for either administrative or disciplinary reasons. OAR § 291-062-0150(1)-(3).

PAGE 4 – OPINION AND ORDER

On August 11, 2016, after Bristol's routine urine screen was positive for codeine, ODOC terminated Bristol's transitional housing at Bridges to Change. (Washington Decl. ¶ 5, Ex. 9.) The same day, Bristol's supervising officer requested a Transitional Leave Suspend and Detain Order from the Functional Unit Manager ("FUM") at PRCF. (Washington Decl. ¶ 6, Ex. 10.) The FUM granted the request and recommended that Bristol be removed from the STTL program. (Washington Decl. ¶ 6, Ex. 11.) Following his arrest on the suspend and detain order, Bristol was held in Multnomah County Jail from August 12, 2016 until August 22, 2016, without a hearing, after which Bristol returned to ODOC custody. (Washington Decl. ¶ 6, Exs. 12, 13.)

On August 25, 2016, ODOC provided Bristol with a copy of the misconduct report, notice of hearing, notice of inmate rights in a hearing, and rules of prohibited conduct for his upcoming prison disciplinary hearing. (Washington Decl. ¶ 7, Ex. 15.) ODOC denied Bristol's counsel's request to attend Bristol's disciplinary hearing. (Washington Decl. ¶ 7, Ex. 14.) On August 29, 2016, Defendant Hearings Officer Sam Nagy conducted Bristol's disciplinary hearing. (Washington Decl. ¶ 7, Ex. 16.) Prior to the start of the hearing, Nagy denied Bristol's request for a continuance and his request to present hair follicle evidence to challenge the positive urine screen. (*Id.*) Nagy determined that the facts supported a finding of a Transitional Leave Violation and Disobedience of an Order III. (*Id.*) On September 9, 2016, the FUM approved Nagy's recommendation to revoke Bristol's STTL status, and signed a Disciplinary Hearing Finding of Fact, Conclusion, and Order (the "September 9, 2016 Disciplinary Order") revoking Bristol's transitional leave. (*Id.*) After Bristol served the remainder of his original sentence in ODOC custody, ODOC released Bristol to post-prison supervision on January 27, 2017. (Washington Decl. ¶ 8, Exs. 17, 18.)

**STANDARD OF REVIEW**

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). On a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party, and draw all reasonable inferences in favor of that party. *Porter v. Cal. Dep't of Corr.*, 419 F.3d 885, 891 (9th Cir. 2005) (citations omitted). The court does not assess the credibility of witnesses, weigh evidence, or determine the truth of matters in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

**DISCUSSION**

Section 1983 provides a private right of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. To state a claim under § 1983, a plaintiff must allege two essential elements: (1) a federal constitutional or statutory right was violated, and (2) the alleged violation was committed by a person acting under the color of state law. *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001). There is no dispute that the State Defendants were acting pursuant to state law. The parties, however, disagree as to whether the State Defendants violated Bristol's constitutional rights.

In his complaint, Bristol alleges that the State Defendants violated his Fourteenth Amendment right to due process in the following ways:

    a.    Failing to provide a preliminary hearing promptly after [Bristol's] arrest and detention to determine whether there was probable cause or reasonable ground to believe that he had committed acts that would constitute a violation of transitional leave conditions;

b. Failing to provide at a preliminary hearing: notice of the alleged transitional leave violations; an opportunity to appear and to present evidence; a conditional right to confront the government's witnesses; an independent decision-maker; and a written report of the hearing;

c. Failing to provide a revocation hearing at which a final evaluation of any contested relevant facts and consideration of the facts as determined at the preliminary hearing warrant revocation;

d. Failing to provide at a revocation hearing: written notice of the claimed violations of transitional leave; disclosure of evidence against the inmate; opportunity to be heard in person and to present witnesses and documentary evidence; the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); a neutral and detached hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and a written statement by the factfinders as to the evidence relied on and reasons for revoking transitional leave;

e. Failing to make an individualized decision at the preliminary and revocation hearing as to the need for counsel at the hearing;

f. Failing to provide Plaintiff a meaningful opportunity to be heard and to show exculpatory evidence;

g. Maintaining a policy and practice categorically prohibiting offenders from being represented by counsel;

h. Failing to promulgate rules and policies providing a constitutionally adequate process for the revocation of transitional leave; and

i. Summarily suspending and/or terminating [Bristol's] transitional leave without providing a preliminary hearing and revocation hearing.

(Compl. ¶ 48.) The State Defendants argue that they are immune from liability on the grounds of qualified and Eleventh Amendment immunity, and that neither injunctive nor declaratory relief is available here.

PAGE 7 – OPINION AND ORDER

## I. FOURTEENTH AMENDMENT VIOLATION

The State Defendants argue that they did not violate Bristol's Fourteenth Amendment right to due process because Bristol did not have a protected liberty interest in his STTL status and, as such, the procedural protections required by *Morrissey* do not apply. (Defs.' Mot. Summ. J. at 11-17.)

The Fourteenth Amendment provides: "No state shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend XIV, § 1. A plaintiff asserting a Fourteenth Amendment due process claim related to disciplinary action that leads to his confinement must first establish that he has been deprived of a protected liberty interest. *See Ward v. Ryan*, 623 F.3d 807, 813 (9th Cir. 2010) (finding that to establish a due process violation, an inmate must demonstrate that he has been deprived of a protected liberty interest by government action). A protected liberty arises either from the Due Process Clause directly or from state law. *See Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) ("A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' . . . or it may arise from an expectation or interest created by state laws or policies . . . ." (citing *Vitek v. Jones*, 445 U.S. 480, 493-94 (1980) (finding a liberty interest in avoiding involuntary psychiatric treatment and transfer to a mental institution under the Due Process Clause), and *Wolff v. McDonnell*, 418 U.S. 539, 556-58 (1974) (finding a liberty interest in avoiding withdrawal of state-created system of good-time credits)). Bristol argues only that he has a protected liberty interest arising directly from the Due Process Clause. (*See* Pl.'s Mot. Summ. J. at 30 n.132 ("Bristol's case . . . involves a liberty interest arising directly under the Due Process Clause.")).

Relying on the Supreme Court's decisions in *Morrissey*, 408 U.S. 471, and *Young v. Harper*, 520 U.S. 143 (1997), Bristol argues that he had a protected liberty interest in his release from confinement and into the STTL program. (Pl.'s Resp. at 8.) According to Bristol, the

PAGE 8 – OPINION AND ORDER

"STTL was materially the same kind of liberty right recognized in *Morrissey*" and [t]he "decision in *Young* provides the framework for resolving the issue presented here." (Pl.'s Resp. at 9-10.) In response, the State Defendants argue that Bristol's "situation is easily distinguishable from the facts in *Morrissey* and *Young*." (Defs.' Mot. Summ. J. at 16.)

In *Morrissey*, the Supreme Court held that revoking a prisoner's parole was a deprivation of liberty that required procedural due process—adequate notice and a fair opportunity to be heard. 408 U.S. at 482, 489; *see also Gagnon v. Scarpelli*, 411 U.S. 778 (1973) (extending the *Morrissey* protections to probation revocation). In reaching its decision that an individual has a liberty interest in remaining on parole, the Court relied on the nature of the freedoms enjoyed by the individual while in the community, such as the fact that a parolee is free to be employed, to spend time with family and friends, and to "form the other enduring attachments of normal life":

> [s]ubject to the conditions of his parole . . . [he] can be gainfully employed and is free to be with family and friends and to form the other enduring attachments of normal life . . . . [H]is condition is very different from that of confinement in a prison . . . . The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions.

*Id.* at 482. The Supreme Court outlined the minimal procedural due process requirements for parole revocation hearings, including: (1) written notice of the alleged violation, (2) disclosure of the evidence against the individual, (3) an "opportunity to be heard in person and to present witnesses and documentary evidence," (4) absent a finding of good cause, "the right to confront and cross-examine adverse witnesses," (5) a "neutral and detached" hearing body, and (6) a written statement by the hearing officer as to the evidence relied on and the reasons for revoking release. *Morrissey*, 408 U.S. at 488-89.

In *Young*, the Supreme Court extended the protections of *Morrissey* and held that revoking an inmate's *pre*-parole release also implicated a protected liberty interest that required

*Morrissey's* procedural protections. 520 U.S. at 148-49. The pre-parolee "was released from prison before the expiration of his sentence. He kept his own residence; he sought, obtained, and maintained a job; and he lived a life generally free of the incidents of imprisonment." *Id*. at 148. While Oklahoma's pre-release program placed some strict release limitations on the pre-parolee, the Court determined that those restrictions on his freedom were similar to those of a parolee. *Id.*

As in *Young*, this Court must determine whether the conditions of Bristol's release "fall[] within the compass" of sufficient freedom to confer a protected liberty interest and trigger *Morrissey's* procedural protections. *Id*. The specific conditions of Bristol's release are detailed above, and mirror those of the pre-parolee in *Young*. For example, both were released early from prison and into the community on a conditional basis, were allowed to obtain employment and community housing, were subject to random searches, were required to report to a supervising officer, were subject to travel restrictions, were required to refrain from using controlled substances and submit to regular drug testing, and were otherwise allowed to "enjoy most of the benefits of a normal existence." *Harper v. Young*, 64 F.3d 563, 565 n.5 (10th Cir. 1995); *compare* Eklund Am. Decl. Ex. 5 at 51-53. Although Bristol was subject to a few conditions not present in *Young*, such as polygraph testing and the requirement to carry an ODOC photo identification card (Eklund Am. Decl. Ex. 5 at 51-53), those additional conditions were not particularly restrictive.

One factor that does distinguish this case from *Young* is found in OAR § 291-062-0150(2)(a). Specifically, subsection (2)(a) authorized "[t]he functional unit manager or designee in his/her discretion [to] immediately remove or suspend an inmate from the program and reassign the inmate to another Department of Corrections facility without a hearing, for *administrative* reasons." OAR § 291-062-0150(2)(a) (emphasis added); *cf. Young*, 520 U.S. at

150 (finding no evidence in the record that the pre-parolee's "continued participation was conditioned on extrinsic events"); *Morrissey*, 408 U.S. at 482 & n.8 (explaining that a factor of the parolee's liberty interest was "the implicit promise that parole will be revoked only if he fails to live up to the parole conditions"). Thus, pursuant to regulation, Bristol's participation in STTL was conditioned in part on extrinsic events, to the extent that ODOC regulations allowed ODOC to remove Bristol from STTL at any time for "administrative" reasons. *See Asquith v. Dep't of Corr.*, 186 F.3d 407, 411 (3d Cir. 1999) (finding that because the Commissioner was "authorized at any time to transfer an inmate from one place of confinement to another," the prisoner's "continued participation" in the work-release program "was dependent upon extrinsic events, and he could have no expectation that he would remain in the program once charged with a major violation"). However, ODOC's ability to revoke Bristol from the STTL program for an "administrative" reason and without a hearing also raises serious due process concerns. This Court cannot conclude that Bristol's liberty interest in continued release under *Morrissey* and *Young* is diminished by ODOC's regulatory authority to revoke release without any process and in the absence of a violation, and there is no evidence in the record that ODOC exercises its authority under the regulation. In any event, the Court finds that Bristol's belief that ODOC would not revoke his release arbitrarily in the absence of a violation was a reasonable belief under the circumstances present here.

There is no serious dispute that the freedoms Bristol enjoyed on release were "significantly greater" than while in prison. Bristol maintained full-time employment, traveled to and from work, attended a drug treatment program, participated in an Alcoholics Anonymous support group, controlled his finances, socialized "with family and friends," "enjoyed recreational time," and "started dating someone, and developing a positive intimate relationship .

. . ." (John T. Bristol Decl. ¶¶ 8-12, Mar. 9, 2018.) Importantly, under the conditions of his STTL release, Bristol "was able to move freely and maintain [his] privacy." (Bristol Decl. ¶ 13.)

The Court finds that Bristol's release conditions closely resemble those of the pre-parolee in *Young*, and that the STTL program provided Bristol with sufficient freedom to confer a protected liberty interest requiring *Morrissey's* procedural protections. *Young*, 520 U.S. at 148; *see also Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 886-90 (1st Cir. 2010) (holding that inmates had a liberty interest in an Electronic Supervision Program that allowed inmate to complete their sentences outside of prison); *Paige v. Hudson*, 341 F.3d 642, 643-44 (7th Cir. 2003) (holding that "being removed from a home-detention program into jail is a sufficiently large incremental reduction in freedom to be classified as a deprivation of liberty"); *Kim v. Hurston*, 182 F.3d 113, 117-18 (2d Cir. 1999) (holding that an inmate on a work release program "enjoyed a liberty interest, the loss of which imposed a sufficiently 'serious hardship' to require compliance with at least minimal procedural due process"). It is undisputed that the State Defendants failed to provide Bristol with all of *Morrissey's* procedural protections in connection with their revocation of his transitional leave. Their failure to do so violated Bristol's right to due process guaranteed by the Fourteenth Amendment.

## II.     QUALIFIED IMMUNITY

The State Defendants argue that even if the Court finds a constitutional violation here, they are immune from civil damages because there was no clearly established right to a *Morrissey* hearing prior to revoking transitional leave status. (Defs.' Mot. Summ. J. at 9-10.) The Court agrees that Bristol's liberty interest in the STTL program was not clearly established at the time of the violation, and therefore the State Defendants are not liable for civil damages resulting from the constitutional violation.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "[Q]ualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" *Pearson*, 555 U.S. at 231. To determine whether a government official is entitled to qualified immunity, the court must determine: (1) whether, "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the [official's] conduct violated a constitutional right;" and (2) "whether the right was clearly established." *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *modified by*, *Pearson*, 555 U.S. 223.

The Supreme Court recently "reiterate[d] that 'clearly established law' should not be defined 'at a high level of generality.'" *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (citation omitted). Although the Supreme Court "does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* (quotations and citation omitted). "In other words, immunity protects all but the plainly incompetent or those who knowingly violate the law." *Id.* (quotations and citation omitted).

The State Defendants argue that even if they violated Bristol's due process rights, they are entitled to qualified immunity because the law regarding whether a pre-release program conferred a protected liberty interest was not clearly established at the time. (Defs.' Mot. Summ. J. at 9-10.) In response, Bristol argues that the "Supreme Court's decisions in *Morrissey* and

PAGE 13 – OPINION AND ORDER

*Young* placed the conclusion that [the State] Defendants acted unreasonably in these circumstances beyond debate." (Pl.'s Resp. at 32-35) (quotations and citation omitted).

It appears that no court has directly considered whether Oregon's early release programs trigger the protections of *Morrissey.* Although this lack of precedent directly on point does not end the inquiry (*see White*, 137 S. Ct. at 551 ("Case law does not require a case directly on point for a right to be clearly established[.]") (quotations and citation omitted)), the Court concludes that whether STTL revocation triggers *Morrissey* was subject to reasonable debate at the time of Bristol's revocation. *See Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018) (stating that "general rules set forth in [Supreme Court precedent] do not by themselves create clearly established law outside an 'obvious case'") (quotations and citation omitted); *Vega v. United States*, No. C11-632 RSM, 2013 WL 1333978, at *3 (W. D. Wash. Apr. 1, 2013) ("Although the Ninth Circuit has not foreclosed that termination of a reentry or drug rehabilitation program may result in an atypical hardship, the contours of whether such termination requires procedural due process protections cannot be said to be clearly established. Thus, the Court cannot hold Defendants liable for failing to provide a pre-termination hearing pursuant to BOP regulations during Plaintiff's transfer from [residential drug treatment] back to prison."). Although the facts of this case are closely aligned with those in *Young*, the early release program and state regulatory framework in *Young* were not so closely aligned as to deem the application of *Morrissey* clearly established. That is especially true in light of the fact that unlike in *Young*, here Oregon regulations expressly authorized revocation of Bristol's STTL status without due process. *See Grossman v. City of Portland*, 33 F.3d 1200, 1209 (9th Cir. 1994) ("Courts have accordingly held that the existence of a statute or ordinance authorizing particular conduct is a factor which militates in favor of the conclusion that a reasonable official would find that conduct

constitutional."). Therefore, the State Defendants are immune from civil damages based on qualified immunity.

## III.     ELEVENTH AMENDMENT IMMUNITY

The State Defendants also seek judgment on Bristol's claim against them in their official capacities, pursuant to Eleventh Amendment immunity. (Defs.' Mot. Summ. J. at 17-18.)

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "Immunity from suit under the Eleventh Amendment further extends to suits by citizens against their own state and 'certain actions against state agencies and state instrumentalities.'" *Holz v. Nenana City Pub. Sch. Dist.*, 347 F.3d 1176, 1180 (9th Cir. 2003) (quoting *Eason v. Clark Cty. Sch. Dist.*, 303 F.3d 1137, 1140 (9th Cir. 2002)). Plaintiffs may overcome the Eleventh Amendment bar if a state "unequivocally" waives its sovereign immunity or there exists "an unequivocal expression of congressional intent to 'overturn the constitutionally guaranteed immunity of the several States'" with respect to rights protected by the Fourteenth Amendment. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984). Oregon has not waived immunity with respect to § 1983 actions in federal court, and Congress did not intend § 1983 to abrogate a state's Eleventh Amendment immunity. *See Dittman v. California*, 191 F.3d 1020, 1025–26 (9th Cir. 1999).

However, the *Ex parte Young* exception to Eleventh Amendment immunity allows individuals to sue state officials for prospective injunctive or declaratory relief for ongoing violations of federal law. *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S.

635, 645 (2002); *see also Ex Parte Young*, 209 U.S. 123, 159-60 (1908). As such, the Court considers below whether Bristol is entitled to prospective injunctive or declaratory relief.

### A. Injunctive Relief

In his complaint, Bristol seeks injunctive relief "ordering [the State] Defendants . . . to immediately: 1. Vacate Plaintiff's September 9, 2016, disciplinary order; 2. Order [the State] Defendants to promulgate rules and procedures in accordance with and cease acting contrary to [*Morrissey*, 408 U.S. 471] and [*Gagnon*, 411 U.S. 778] in response to alleged violations of STTL." (Compl. at 16.) The State Defendants argue that Bristol lacks standing to pursue injunctive relief. (Defs.' Reply at 2-4.)

Standing is "the threshold question in every federal case, determining the power of the court to entertain the suit." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). Standing originates from the Constitution and limits federal courts to "Cases" and "Controversies." *Lujan v. Def. of Wildlife*, 504 U.S. 555, 560 (1992) (finding that standing "set[s] apart the 'Cases' and 'Controversies' that are of the justiciable sort referred to in Article III"). To establish constitutional standing, a plaintiff "must have suffered [1] an 'injury in fact' . . . an invasion of a legally protected interest which is . . . concrete and particularized . . . . [2] there must be a causal connection between the injury and the conduct complained of . . . . [3] it must be 'likely,' as opposed to merely 'speculative,' that the injury will be redressed by a favorable decision." *Id.* (internal citation omitted). Finally, to obtain equitable or other injunctive relief, a plaintiff must also demonstrate "a real and immediate threat of repeated injury" in the future. *Fortyune v. Am. Multi–Cinema, Inc.*, 364 F.3d 1075, 1081 (9th Cir. 2004); *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983) (finding that injunctive relief also requires the plaintiff to demonstrate "a sufficient likelihood that he will again be wronged in a similar way"); *O'Shea v. Littleton*, 414

U.S. 488, 496 (1974) (holding that a plaintiff must establish a "real and immediate threat of repeated injury").

Turning first to Bristol's request that the Court order the State Defendants to promulgate rules and procedures to comply with *Morrissey,* the State Defendants argue that Bristol "offers no evidence of a 'real or immediate threat' that he would have his alleged liberty interest violated again by [the State] Defendants' failure to provide him with a *Morrissey* hearing after violations of his short term transitional leave conditions or the conditions of his alternative incarceration program during a future early release from prison." (Defs.' Reply at 3.) The Court agrees. Bristol is no longer a participant in the STTL or AIC programs and therefore he runs no risk that the State Defendants will continue to violate his constitutional rights by depriving him of a *Morrissey* hearing prior to another revocation. Accordingly, Bristol lacks standing to obtain relief ordering the State Defendants to promulgate rules and procedures in accordance with *Morrissey* based only on speculation that he might again experience a Fourteenth Amendment injury. *See Lyons*, 461 U.S. at 105-06 ("In order to establish an actual controversy in this case, Lyons would have had not only to allege that he would have another encounter with the police but also to make the incredible assertion either, (1) that *all* police officers in Los Angeles *always* choke any citizen with whom they happen to have an encounter, whether for the purpose of arrest, issuing a citation or for questioning or, (2) that the City ordered or authorized police officers to act in such manner. Although Count V alleged that the City authorized the use of the control holds in situations where deadly force was not threatened, it did not indicate why Lyons might be realistically threatened by police officers who acted within the strictures of the City's policy.") (emphasis in original).

However, with regard to Bristol's request that the Court award relief vacating the September 9, 2016 Disciplinary Order, the Court agrees that Bristol is entitled to that relief. Bristol is serving a term of post-prison supervision that does not expire until January 29, 2020. (Bristol Decl. ¶ 36.) At oral argument, the State Defendants acknowledged that if the Court enjoins the State Defendants from continuing to enforce the disciplinary order, Bristol would "recover" the 172 days he served in prison as a result of the State Defendants' constitutional violation and his ongoing term of post-prison supervision would be shortened commensurably. As such, an award of prospective injunctive relief here would prevent the continued enforcement of an unconstitutional order. *Cf. Doe v. Lawrence Livermore Nat'l Lab.*, 131 F.3d 836, 841-42 (9th Cir. 1997) (holding that "reinstatement [of employment] is a legitimate request for prospective injunctive relief"). Accordingly, the Court grants Bristol's motion for summary judgment on his claim for relief vacating the September 9, 2016 Disciplinary Order.[6]

### B. Declaratory Relief

In his complaint, Bristol also seeks a declaratory judgment that the State Defendants violated his right to due process under the Fourteenth Amendment by: (1) "failing to provide the process required in [*Morrissey*, 408 U.S. 471, *Gagnon*, 411 U.S. 778] before depriving him of his liberty interest in release from confinement on STTL;" (2) "refusing to consider his request to be represented by counsel in his disciplinary hearing;" and (3) " denying him the opportunity to present evidence in his defense at his disciplinary hearing." (Compl. at 15-16.) The State Defendants argue that this Court should decline to exercise jurisdiction over Bristol's request for a declaratory judgment because his claims are now moot. (Defs.' Reply at 4-6.); *see R.R. Street*

---

[6] The State Defendants have not called into question their authority or ability to vacate the disciplinary order.

*& Co. Inc. v. Transp. Ins. Co.*, 656 F.3d 966, 975 (9th Cir. 2011) (finding that federal courts are allowed "broad discretion" to decline to entertain declaratory judgment actions so long as this "furthers the Declaratory Judgment Act's purpose of enhancing 'judicial economy and cooperative federalism'") (citation omitted). Specifically, the State Defendants argue that the declaratory relief Bristol seeks here would involve "adjudicating past violations of federal law—as opposed to continuing or future violations of federal law . . . ." (Defs. Reply at 6.) As such, a declaratory judgment by this Court will not "affect [the State] Defendants' behavior towards [Bristol]." (*Id.*) The Court agrees.

"The Declaratory Judgment Act of 1934, 28 U.S.C. § 2201, permits a federal court to declare the rights of a party whether or not further relief is or could be sought, and we have held that under this Act declaratory relief may be available even though an injunction is not." *Green v. Mansour*, 474 U.S. 64, 72 (1985). However, § 2201 "is an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." *Public Serv. Comm'n v. Wycoff Co.*, 344 U.S. 237, 241 (1952). There are a "number of instances" in which declaratory judgment is not available. *Green*, 474 U.S. at 72 (citing examples). Additionally, the *Ex Parte Young* exception authorizes claims for declaratory relief only to preclude continuing violations, as opposed to past violations, of federal law. *See, e.g., Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 73 (1996) (holding that the Eleventh Amendment does not bar suits against state officials that seek prospective relief to "end a continuing violation of federal law").

The declaratory relief Bristol seeks here—a declaration that the State Defendants violated the Fourteenth Amendment—is retrospective, not prospective. As such, the *Ex parte Young* exception to Eleventh Amendment immunity does not apply. *See Green*, 474 U.S. at 68-74 (finding that declaratory relief is available under *Ex parte Young* only when there are ongoing or

threatened violations); *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) ("Support for this narrow view of the Eleventh Amendment is drawn mainly from *Ex parte Young* . . . under which suits seeking prospective, but not compensatory or other retrospective relief, may be brought against state officials in federal court challenging the constitutionality of official conduct enforcing state law."); *see also Look v. Harris*, C 16-5465 CRB, 2017 WL 345992, at *4 (N.D. Cal. Jan. 24, 2017) (dismissing declaratory relief claim on the ground that the allegations related to the defendants' past actions); *Hiramanek v. Clark*, No. C-13-0228 EMC, 2013 WL 3803613, at *7 (N.D. Cal. July 19, 2013) ("*Ex parte Young* doctrine applies only where prospective injunctive or declaratory relief is sought.").

## CONCLUSION

For the reasons stated, the Court GRANTS IN PART Bristol's Motion for Summary Judgment (ECF No. 19), and ORDERS the State Defendants to VACATE the September 9, 2016 Disciplinary Order on the ground that it violated Bristol's right to due process under the Fourteenth Amendment. The Court also GRANTS IN PART the State Defendants' Motion for Summary Judgment (ECF No. 22), as follows: Bristol has voluntarily dismissed defendant Peters from this action, the remaining State Defendants are entitled to qualified immunity from Bristol's claim for civil damages, and Bristol is not entitled to any declaratory or injunctive relief other than that awarded herein. The Court denies Bristol's Motion for Additional Authorities (ECF No. 33).

**IT IS SO ORDERED.**

DATED this 27th day of November, 2018.

*/s/ Stacie F. Beckerman*
_____
STACIE F. BECKERMAN
United States Magistrate Judge